[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11850

_____

AFFORDABLE BIO FEEDSTOCK, INC.,
AFFORDABLE BIO FEEDSTOCK OF PORT CHARLOTTE,
LLC,

                                          Plaintiffs-Appellants,

*versus*

UNITED STATES OF AMERICA,

                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-01835-PGB-DCI

_____

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Affordable Bio Feedstock, Inc., and Affordable Bio Feedstock of Port Charlotte, LLC, (collectively "ABF")[1] appeal the District Court's summary judgment denying their claim for reimbursement of "protest payments" made to the Internal Revenue Service ("IRS") after the IRS claw-backed an alternative fuel tax credit it had previously given ABF. In support of its position, ABF argues that federal courts may order the Government to pay plaintiffs money from the Federal Treasury based solely on equitable principles. Unfortunately for ABF, the Supreme Court foreclosed its arguments 32 years ago in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 416, 110 S. Ct. 2465, 2467 (1990), when it held that "payments of money from the Federal Treasury are limited to those authorized by statute." Accordingly, we affirm the District Court's grant of summary judgment.

## I.

ABF was a waste-to-energy company that acquired oil and food waste, or "brown grease," from restaurants and processed it for use as alternative fuel. A provision of the tax code, 26 U.S.C. § 4041(a)(2), imposes an excise tax for certain alternative fuels.

---

[1] Although ABF is technically two companies, we refer to them as one for the remainder of the opinion.

Taxpayers must register for this excise tax in accordance with IRS regulations.  26 U.S.C. § 4101(a)(1).  IRS regulations require taxpayers registering for § 4041(a)(2)'s excise tax to submit a Form 637 application.  26 C.F.R. § 48.4101-1(e).  Form 637 consists of a series of "activity letters" whereby registrants describe the activities they believe falls under the excise tax.  Once a Form 637 application is submitted, an agent from the IRS's Excise Tax Group performs an Initial Compliance Review ("ICR") to determine whether to recommend approving or denying the taxpayer's registration for the excise tax.  The Chief of the Excise Tax Group, known as the District Director, then reviews the agent's recommendation and decides whether to approve the Form 637 application, apply the alternative fuel excise tax, and register the applicant's activity letter.

Registering an activity letter for § 4041(a)(2)'s alternative fuel excise tax is essential to claim the alternative fuel excise tax credit authorized by 26 U.S.C. § 6427(e)(2) and defined by 26 U.S.C. § 6426(d).  § 2647(e)(4) (requiring registration under § 4101 before awarding § 2657(e)(2)'s alternative fuel tax credit).  Section 6426(d) defines alternative fuels qualifying for the alternative fuel tax credit as alternative fuels "sold by the taxpayer for use as a fuel in a motor vehicle or motorboat, sold by the taxpayer for use as a fuel in aviation, or so used by the taxpayer."  § 6426(d)(1).  This credit may only be used against the taxpayer's alternative fuel excise tax liability.  § 6426(a)(2).  Should a refund made pursuant to § 6427(e)(2) constitute an "excessive amount," the IRS can assess and collect that refund as if the claiming entity was liable for the alternative

fuel excise tax. 26 U.S.C. § 6206. An "excessive amount" is defined as the amount by which the refund exceeded the amount allowable for a refund. 26 U.S.C. § 6675(b).

Activity letter registrants usually claim the § 6427(e)(2)'s alternative fuel excise tax credit by filing a Form 720 Quarterly Federal Excise Tax Return. However, an activity letter is only valid if the District Director "has issued a registration letter" and "the registration has not been revoked or suspended." 26 C.F.R. § 48.4101-1(a)(2). The District Director "must revoke or suspend the registration" of an activity letter if the District Director determines "at any time" that (i) the registrant's alternative fuel activities do not qualify for registration and the registrant "has not corrected the deficiency within a reasonable period of time after notification by the district director;" (ii) the registrant used the activity letter registration to evade, attempt to evade, or postpone the imposition of the excise tax, or "to make a fraudulent claim for a credit or payment;" (iii) the registrant aided or abetted another in evading or attempting to evade the imposition of an excise tax or "in making a fraudulent claim for a credit or payment;" or (iv) the registrant "sold, leased, or otherwise allowed another person to use its registration." 26 C.F.R. § 48.101-1(i)(1).

Here, ABF submitted its Form 637 applications to the IRS on May 29, 2013, and June 13, 2013, requesting activity letter registrations. The IRS agent assigned to conduct ABF's ICRs then recommended that ABF's applications for activity letter registrations be approved. Accordingly, the District Director approved the agent's

recommendation and sent ABF signed letters informing ABF that the IRS had approved its activity letter registrations.

These activity letter registrations remained valid until 2016, when ABF filed separate Form 8849s claiming refunds under the § 2647's alternative fuel excise tax credit. ABF claimed $423,315 for 2015 and $42,112 for January 2016. The IRS paid these claims on March 22, 2016, and April 19, 2016, respectively. In October 2016, the IRS began auditing ABF for these claims.

On January 25, 2018, the Chief of Estate, Gift, and Excise Tax Examination sent ABF signed letters revoking its activity letter registrations. On September 17, 2018, the IRS sought reimbursement of the paid alternative tax credits along with interest and penalties.

ABF, who sold their assets to a third party in October 2017, returned "under protest" a portion of the paid tax credits totaling $51,397. ABF then initiated this action on September 23, 2019, seeking refunds for the above paid sums. On March 29, 2021, the District Court granted summary judgment in favor of the IRS. *Affordable Bio Feedstock, Inc. v. United States*, 529 F.Supp.3d 1298 (M.D. Fla. 2021). ABF timely appealed.

## II.

We review grants of summary judgment *de novo. Brown v. Nexus Bus. Sols., LLC*, 29 F.4th 1315, 1317 (11th Cir. 2022). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

6                    Opinion of the Court                 21-11850

On summary judgment review, we view all evidence in "the light most favorable to the nonmoving party" and draw "all justifiable inferences in that party's favor." *Id.* at 1317–18 (quotation and quotation marks omitted).

### III.

The parties have stipulated that whether ABF qualifies for the alternative fuel tax credit under the tax code is not at issue in this case and is not a basis for recovery.  Instead, ABF argues that the IRS is equitably estopped from recovering the alternative fuel tax credits paid to ABF under § 6427(e)(2) because an IRS agent and the District Director both approved ABF's activity letter registrations.  Appellant Br. at 18–22.

We need not address ABF's arguments point by point.[2]  The sole issue before this Court is whether any court may order that funds be appropriated from the Federal Treasury based on equitable estoppel without specific authorization from Congress.  And the Supreme Court answered that question with a resounding "no" 32 years ago:

> The Appropriations Clause of the Constitution, Art. I, § 9, cl. 7, provides that: "No Money shall be drawn from the Treasury, but in Consequence of

---

[2] The District Court did address ABF's arguments point by point. *Affordable Bio Feedstock, Inc.*, 529 F.Supp.3d at 1302–08.  Although addressing these arguments is unnecessary for deciding the case, we see no problems with the District Court's analysis.

> Appropriations made by Law." For the particular type of claim at issue here, a claim for money from the Federal Treasury, the Clause provides an explicit rule of decision. Money may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute.

*Richmond*, 496 U.S. at 424, 110 S. Ct. at 2471. Nor does just any statute suffice:

> The general appropriation for payment of judgments, in any event, does not create an all-purpose fund for judicial disbursement. A law that identifies the source of funds is not to be confused with the conditions prescribed for their payment. Rather, funds may be paid out only on the basis of a judgment based on a substantive right to compensation based on the express terms of a specific statute.

*Id.* at 432, 110 S. Ct. at 2475. The Supreme Court then concluded:

> Whether there are any extreme circumstances that might support estoppel in a case not involving payment from the Treasury is a matter we need not address. As for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds. In this context there can be no estoppel, for courts cannot estop the Constitution.

*Id.* at 434, 110 S. Ct. at 2476.  This Court has also clearly stated that the "Supreme Court has held that equitable estoppel is unavailable in a claim against the government for funds from the public treasury." *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1342–43 (11th Cir. 2007) (citing *Richmond*, 496 U.S. at 424–34, 110 S. Ct. at 2471–76).

Here, ABF seeks only to recover the money it already paid to the IRS.  That ABF paid this money "under protest" is irrelevant. The only relevant fact is that this money is currently within the Federal Treasury, and so the IRS would have to withdraw money from the Federal Treasury to pay any adverse equitable judgments. Under *Richmond*, the Appropriation Clause's "explicit rule of decision" for withdrawing funds from the Federal Treasury requires that "the payment of money from the Treasury must be authorized by a statute."  496 U.S. at 424, 110 S. Ct. at 2471.  ABF has waived any argument that its activities qualified it for the alternative fuel tax credit under § 6426 and points to no other statute(s) as a potential basis for recovery. *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) (describing waiver as a matter of the party's intent and holding "if a party affirmatively and intentionally relinquishes an issue, then courts must respect that decision"). Therefore, ABF cannot recover monetary damages from the Federal Treasury.

The judgment of the District Court is

**AFFIRMED.**